Benton *v.* Craig.

The judgment of the Circuit Court is affirmed, with costs.

---

(198)    BENTON *v.* CRAIG.

1. An attorney is not liable unless his client informs him of the nature of his defence.

2. Money is unreasonably and vexatiously delayed from the time the plaintiff's right of action accrues.

3. Right of action accrues against an agent for money received after demand by the owner, and neglect or refusal on his part to pay.

4. If money be paid to a lawyer for services to be performed at a future day, the right of action to recover it back accrues from the time he neglects or refuses to perform the services.

5. A notice to take depositions on 24th June, 1828, between the hours 8, A. M., and 6, P. M., and on the 25th, 26th, 27th and 28th, same month and same hours, is bad. If the beginning had been confined to a day certain, and the intention of continuing from day to day expressed, the notice would have been good.

6. A witness cannot testify to the amount of a record or of any written instrument, unless its absence be accounted for.

### ERROR to Howard Circuit Court.

TOMPKINS, J., delivered the opinion of the Court.

This was an action of assumpsit for money had and received by Benton, the defendant in the Circuit Court, for the use of Craig, the plaintiff, and for money laid out and expended by the plaintiff for the defendant, at his request. Plea, non-assumpsit, and judgment for the plaintiff. To reverse which judgment the defendant, now plaintiff in error, sues out this writ.

Benton *v.* Craig.

On the trial of this cause in the Circuit Court, it was proved that some time in the year 1818, or at an earlier date, Craig employed Benton to attend to two law suits, for which business Craig paid him, through an agent, one hundred dollars. This agent, who was the witness, says that Craig gave Benton his promissory note for that sum of money, and Benton agreed to attend as counsel and attorney for the plaintiff, Craig, to those suits. It was also proved that Benton was employed by Craig in two other suits, and the payment of one hundred dollars was proved. It was further proved that Benton did nothing more, perhaps, in those cases than to argue a motion to dispauper one of the plaintiffs, who had been allowed to sue as a pauper. Some depositions were read, to the reading of which objections were made by the defendant below.

(199) The counsel for the defendant in the Circuit Court prayed the Court to instruct the jury:

First. That the plaintiff could not recover in this form of action.

Second. That Benton, as counsel for Craig, was not liable, unless Craig informed him of the nature of his defence, proof, &c.

Third. That they should not allow interest except from the commencement of this action. All of which instructions were refused.

As the cause may otherwise be disposed of, the Court is not disposed to decide whether the first instruction ought to have been given. The second instruction ought to have been given. The jury ought to have been informed whether Benton was furnished with the instructions necessary to enable him to defend the causes. But what kind of evidence, or how much of it might be requisite to satisfy the jury, is not for this Court to say. The third instruction was correctly refused, but the jury ought to have been instructed to allow Craig interest from the time his right of action accrued; for we hold that the payment of money is unreasonably and vexatiously delayed, from the time the plaintiff's right of action accrues. If money is received by a man as agent, a right of action accrues to the owner only from the time of a demand on his part, and a neglect or a refusal on the part of the agent to pay. If it be paid to a lawyer for services to be rendered at a future day, we incline to the opinion that the right of action to recover it back, accrues from the time that he neglects or refuses to perform the stipulated services.

The objections to the reading of the depositions were, that the notice was insufficient, that it was not properly served, and that the witnesses testified to the contents of records and of a draft, none of which were produced. The first of the objections as they appear in the bill of exceptions to have been made, is, that the deposition of one witness was taken without any notice served on the defendant. It was proved that the defendant was a Senator from this State in the Congress of the U. S.; and that while he was absent on his public duties, notice was served on his counsel and attorney at law, and a copy of the notice was put up in the Clerk's office, as is required by the statute in case of non-residents.. The defendant's place of residence was proved to be in St. Louis. The service of the notice was bad. The notice need not be personally served, and inconveniences might have been experienced in finding (200) a proper person on whom to serve it. But this is no more than what may happen in the case of many other of our best citizens, who are temporarily absent, and may not, perhaps, have an agent on whom notice may be lawfully served; and it may here be observed, that our law gives another remedy in such cases, especially if it be attempted to evade the process of the Courts.

Benton v. Craig.

The second objection, in the order they appear on the bill of exceptions, is, that the notice was insufficient. The statute requires that the party shall have notice of the time and place of taking depositions. The notice given is to take depositions on the 24th day of June, 1828, between the hours of eight of the clock, A. M., and six in the evening, on Wednesday the 25th, on Thursday the 26th, on Friday 27th, and on Saturday the 28th of the same month and the same hours, &c. It seems to the Court that such a notice is as bad as no notice. It might as lawfully have extended to an hundred days. Had the time of beginning been confined to Wednesday 25th, and an intention expressed of continuing from day to day till the business was completed, we do not hesitate to say it would have been good. But we are of opinion that the notice before the Court is bad.

The third objection is, in law, good. A witness cannot testify to the contents either of a record or of any written instrument, unless its absence be accounted for. One of the witnesses testified that the defendant presented to him a draft by Craig, the paintiff, for $100, which he paid, and recites the contents of the draft, which was in these words, or to use the witness' own words, in substance as follows:

"P. Holderman & Co.—Four months after date pay to Thomas H. Benton one hundred dollars, out of the proceeds of my salt, for which he is to attend to two suits against myself and others, brought by Hinkson, (or some such name,) and charge to account of your ob't serv't,                                      GEO. CRAIG."

This part of the deposition should have been excluded, as the draft was not produced, nor its absence accounted for. For it goes to establish an agreement between Craig and Benton, and the draft itself, we are told by the witness, was probably delivered to Craig after it was paid; and had the draft been produced, it would have been the best evidence, to supply which the law will not call in the frail memory of man till the absence of the written testimony is satisfactorily accounted for. The payment of the money, however, it may be observed, might have been proved without proving the contents of this draft.

(201) The other witness testifies that in two of the causes where the plaintiff in error had been employed, pleas had been filed by the late Judge Gray and himself, as his memory serves him. The records of these causes are in the Circuit Court of Callaway county, says the witness, and will more certainly show by whom the pleas were filed. In this State the pleas are generally signed by the person filing them, and although the signature might have been the strongest evidence that they were filed by the signer, yet that is not the only admissible testimony of the fact. Had the witness testified to the contents of the pleas filed, this would have been inadmissible testimony. We think this testimony was properly admitted.

The judgment of the Circuit Court is reversed, and the cause is remanded for further proceedings in that Court. This Court not being agreed whether the plaintiff in the Circuit Court could have recovered on the count for money had and received, have chosen to say nothing on the first instruction prayed, and have accordingly decided the cause on other points, leaving the defendant in error to his choice, either of amending in the Court below or of depending on his old declaration.