## NOELL v. GAINES, *Appellant.*

**Notes Secured by Deed of Trust**: LIABILITY OF INDORSER. . A deed of trust given to secure two promissory notes, which, by their terms, matured at different dates, provided that if the maker should fail to pay the debt or interest when the same should become due according to the tenor, date and effect of the notes, then both should become due and payable, and the holder should have the right to order a sale under the deed. Plaintiff having become the holder of both notes, upon default in payment of the first, caused a sale to be made, and the proceeds of the sale not being sufficient to satisfy both notes, on the day when the second became due according to its terms, demanded payment of the maker, and, payment being refused, caused notice of dishonor to be given to defendant who had signed the note as indorser. In an action on the note, *Held*, that the demand and notice came too late; that plaintiff having elected to declare a forfeiture on failure to pay the first note, the second then became due, and in order to charge defendant demand should have been made and notice given then. HOUGH, J., dissenting.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

*Kinley & Wallace* for appellant.

1. The note and deed of trust were executed contemporaneously, and were dependent on each other; the deed of trust providing that the notes could be declared due for a failure to pay the annual interest. This contract governed and controlled the time for the payment of the notes. 2. If the terms of a contemporaneously executed deed of trust can prevent a note from becoming due, as provided by its terms, why cannot the deed of trust thus executed, authorize the holder of the note to declare it due, before its maturity, as expressed on its face. If he does so, should he not notify the indorser, so he can protect himself, for instance, by seeing that the security to be sold under the deed of trust brings its value, or at any rate enough to prevent any sacrifice in the sale of the land. 3. When Noell elected to declare the notes due and payable, he at once should have notified the indorser, and thus have given him

an opportunity to have secured the balance due, if any, after the sale of the trust property. 4. Noell declaring said note due on account of failure to pay annual interest, *made the note absolutely due*, hence the necessity for the demand, notice of non-payment and protest, before the indorser could be held. *Brownlee v. Arnold*, 60 Mo. 79; *Waples v. Jones*, 62 Mo. 440. In *Whitcher v. Webb*, 44 Cal. 127, the court held that in a note containing the condition that upon a failure to pay interest quarterly, the holder of the note might declare it due, and upon such failure, the holder elected to declare such note due, as in the case at bar, that such election on the holder's part made the note absolutely due. The case at bar is similar, except the authority to declare the note due before it matures by its terms, is not found in the note, but in the contemporaneously executed deed of trust, which all the authorities agree is part of the note, and controls it, so far as to prevent its maturing at the time fixed for it to become due. 2 Parson's Cont., 553, and cases there cited. We urge that the note could not become due for one purpose, at the wish of respondent, and not become due absolutely, for all purposes.

*Charles A. Winslow* for respondent.

The record presents but one question for solution: What effect did the provisions of the trust deed have upon the maturity of the notes? In other words, did these provisions have any other and greater effect than to mature all the notes for the purpose of distributing the funds arising on the sale of the land? It is submitted with confidence that they did not, and that for all other purposes the notes matured according to their face. *Morgan v. Martien*, 32 Mo. 438; *Mason v. Barnard*, 36 Mo. 384. There is no similarity between this case and *Brownlee v. Arnold*, 60 Mo. 79. The provisions of the deed of trust in that case were peculiar and very explicit; and the strong language used furnishes the only reason justifying the application of the rule cited, to instruments of this kind. Surely, the rule

cannot be applied generally to all· deeds of trust. That case does not in the slightest degree conflict with the two cases cited above, which are precisely like the case at bar, and should control in its determination. In *Whitcher v. Webb*, 44 Cal. 127, the provision relied on was in the body of the note, and the case, therefore, is not relevant. *Waples v. Jones*, 62 Mo. 440, decides nothing in addition to *Brownlee v. Arnold*, 60 Mo. 79, and there is not the slightest conflict between these cases and *Morgan v. Martien*, 32 Mo. 438, and *Mason v. Barnard*, 36 Mo. 384. In fact, they are in perfect harmony, and together decide the law correctly. The difficulty with the appellant is, that his case falls within the latter cases, and not within those he cites. 2. Parson's Cont., 553, and the cases cited in note, simply maintain the general rule of construction, about which we make no question, and do not otherwise bear on the case at bar.

SHERWOOD, C. J.—The note in suit is as follows, to-wit:

" BRUNSWICK, Mo., February 26th, 1872.

" Three years after date, I promise to pay to the order of Henry L. Gaines, $500, for value received, negotiable and payable, without defalcation or discount, and with interest from date at the rate of ten ·per cent. per annum; and if interest be not paid annually, to become as principal, and bear the same rate of interest.

(Signed) TURGEN WILL."

Upon which note was the following indorsement: " This note is secured by deed of trust, stamped according to law."

The petition alleged the due presentment of the note for payment, at the late residence of the maker, on the 1st day .of March, 1875, and the due notification to the indorser of non-payment. No point is made as to the form of the protest.

The cause was submitted to the court upon the follow-

ing agreed statement of facts: It is agreed that the note sued on is one of two notes, executed by Turgen Will to H. L. Gaines, which were secured by a deed of trust herewith filed and made part of this agreement, by which, on non-payment of the interest to become due annually, or of either note as it should become due, it should have the effect of making all the notes secured as aforesaid due and payable ; that before the maturity of either of said notes, either by their terms or the terms of the trust deed, the notes were all, for value received, transferred and assigned by written indorsement on their backs, by H. L. Gaines to H. M. Noell; that Noell, before the actual maturity of either note, on account of default in payment of interest becoming due annually on said notes, elected to declare them due and payable, and sold the land thereunder, and that after said sale the note sued on, by its terms, became due and was duly protested, as set forth in plaintiff's petition.

The deed of trust, so far as concerns the present inquiry, is as follows: " But, should the first party fail or refuse to pay the said debt or the said interest, or any part thereof, when the same or any part thereof shall become due and payable according to the tenor, date and effect of said notes, then the whole shall become due and payable, and this deed shall remain in full force and effect, and the said party of the second part,      *      *      at the request of the legal holder of the said notes, shall, or may proceed to sell," &c.   John H. Townsend was the trustee.   This suit is brought for the balance due on the note declared on, the sale of the property incumbered failing to realize a sufficient sum.   Judgment went for plaintiff, causing this appeal.

The salient question in the case before us is, whether the proper steps were taken " to fix the indorser " thus converting his conditional liability into an absolute engagement.   And the proper solution of this question depends upon the like solution of another, viz.:   Whether, under

the agreed facts, the notes matured according to their *face*, or whether such maturity was limited and controlled by the terms of the contemporaneously executed deed of trust. It is but the statement of common learning to assert, that instruments executed at the same time and with regard to the same transaction, and making reference to each other, are but one in the eye of the law.    2 Smith's Lead. Cases, 259, *et seq.* and cases cited; 2 Pars. Cont., 553, and cases cited; 1 Greenl. Ev., § 283, and cases cited; *Washington Mut. Fire Ins. Co. v. St. Mary's Seminary*, 52 Mo. 480.    Nor is it even necessary to give this rule operation, this principle application, to make two instruments virtually one, that refer to each other in terms.    2 Smith's Lead. Cases, Id.

The principle followed in *Brownlee v. Arnold*, 60 Mo. 79, was but an enunciation of the familiar rule above noted. There the deed of trust executed at the same time as the notes secured thereby, provided that the notes should not become due, nor the deed be foreclosed until the fourth note should mature.    The first note was, after its maturity, transferred to a third party, who, for the purpose of an ordinary recovery, brought suit thereon, and we held the action *prematurely* brought, holding that it was perfectly competent for the original parties thus to contract; that the notes and deed of trust should be " read together and regarded as one instrument," and that a purchaser with notice of the note falling, according to its face, first due, occupied no better footing than the original payee.    So, also, in *Waples v. Jones*, 62 Mo. 440, pursuing the same line of decisions where notes made payable in three years were secured by deed of trust, which provided that if the interest (made payable annually) was not paid when it fell due, the whole debt should become immediately due, and the trustee might proceed to sell, it was ruled that the trustee rightfully exercised the power of sale on the occurrence of default as to the first year's interest, request being made by the holder of the notes.

In *Stanclit v. Morton*, 11 Kas. 218, the mortgage debt was payable in four years, but the mortgage contained a provision, that if the annual interest was not paid when falling due, or the taxes were not paid when the law made them payable, the whole mortgage debt should become forthwith due. It was held in an action of foreclosure, that by reason of the default in the payment of taxes, the whole debt had become due; and a number of authorities are cited in support of the conclusion reached. In *Whitcher v. Webb*, 44 Cal. 127, the notes were secured by a mortgage; the notes bore interest payable quarterly, with the additional proviso, "that if default were made in this respect, the notes should become due at the option of the holder." The mortgage also contained a clause providing for foreclosure for the entire sum, principal and interest, if the latter were not paid according to stipulation. And in that case the judgment awarding foreclosure was affirmed with damages, the court holding an appeal which sought to accomplish the reversal of such judgment " wholly without merit." Counsel for plaintiff, however, attempt to draw a distinction as to that case, by saying that there the provision relied on, was " in the body of the note." But what of that? If it be true where one instrument refers to another contemporaneously executed, relating to and forming part and parcel of the same transaction, that there both instruments become one in the eye of the law, it must incontestibly follow that it makes no sort of difference in which instrument the proviso be contained.

The case of *Morgan v. Martien*, 32 Mo. 438, is without pertinency, for there the sole question was whether the exoneration of a surety had been accomplished by means of a subsequently executed deed of trust, to which the surety was no party, containing a provision that if any of the notes were not paid in thirty days after due, all the notes should become due immediately; and it was held that the surety was not released, and Judge Bay expressly gives as the grounds for the conclusion arrived at, that the

deed was "merely collateral, and intended as an additional and further security," and it was not "intended that it should operate as an extinguishment of the original contract, or should in anywise enlarge or diminish the liability of either party to such original contract." And the subsequent remarks made in that connection, that "the notes could not, by the happening of such contingency, mature for general purposes," must be construed with reference to the point then under discussion. Construed in this way, they are obviously correct, since no one would contend that an antecedently signed note could, without the consent of the surety, be made to mature at an earlier date than that specified in the note itself.

The decisive point in *Mason v. Barnard*, 36 Mo. 384, was, that Mrs. Fithian was not a mortgagor, and consequently the judgment of foreclosure against her was *void*; this was amply sufficient to dispose of the case, and it is quite evident that a remark made therein, *arguendo*, to the effect that it was not intended that the note "should become due for the purpose of obtaining a judgment at law," was not very carefully weighed, as on the theory on which that case proceeds, Mrs. Fithian could not have been liable, even if such had been the intention, because she was party neither to the notes nor deed of trust, both having been made anterior to her reception of the deed for a portion of the land. That case, therefore, does not present the feature so prominent in this, of contemporaneously executed instruments making reference to, and thus becoming incorporated into each other. Besides, the learned judge who delivered the opinion of the court in that case, concurred in the subsequent one of *Brownlee v. Arnold*, and himself wrote the opinion in *Waples v. Jones*, *supra*, announcing, in all its broadness, the view above expressed.

We are not called upon to, nor do we say, what would be the effect of a purchase made of negotiable paper, secured by deed of trust, without any knowledge of a provision in such deed similar to the one under discussion. That

point may be found discussed in 2 Parsons, *supra*. But we have not the slightest hesitancy as to the correctness of the conclusion reached, that so far as concerns the plaintiff, who, it must be conceded, is a purchaser with notice, the notes and deed of trust are, to all intents and purposes, but one instrument. The holder of the notes and deed of trust, having elected to stand upon the rigid terms of the contract, it was but just to the indorser, in order to charge him, that the maker should have been, when the default as to interest occurred, called upon for the payment of the whole debt which then fell due in accordance with the express terms of that contract; and if payment was not then made by the maker, the indorser should have *then* been notified; for it cannot, with any show of reason, be urged that the notes could, under the terms of the contract, fall due for *one purpose* and not for another. If they fell due when the contingency happened, and because it happened, and because the parties upon valid consideration had thus contracted, it must needs follow that the face of the notes under the circumstances mentioned ceased to furnish any guide as to their maturity.

Again, it appears to be conceded by plaintiff's counsel that upon the occurrence of default in the payment of interest, it was competent for the holder of the notes to have the property sold under the deed of trust. If this be true, and so it was ruled in *Waples v. Jones, supra,* then under our statute, (2 Wag. Stat., § 2, p. 954,) the holder, instead of requesting the trustee to sell, could have resorted to an *ordinary judgment of foreclosure.* In such an event, if the mortgagor were summoned, what would that judgment be? Clearly that the assignee of the debt recover that debt, to be levied of the mortgaged property; and if that be insufficient, that the residue be levied of other goods, &c., of the mortgagor. 2 Wag. Stat., §§ 8, 9, p. 955. If this be admitted, the correctness of the foregoing views is made manifest; for if the notes mature for the purpose of a sale under the deed of trust, then, also, for the purpose of fore-

closure; if for the purpose of foreclosure, then for a *general* judgment and general purposes, for it is not to be supposed that a court would entertain a suit for foreclosure when *prematurely* brought. It seems difficult to answer this reasoning, or combat the force of the illustration just mentioned, nor does the illustration lose any of its force if the mortgagor be not summoned; for still the judgment must go for the whole debt, to be levied alone, however, of the mortgaged property, and we are of opinion, that it conspicuously portrays the error of the idea that the notes might fall due for the purpose of a *sale under the deed of trust, but not otherwise.* Being of this opinion, we must regard the result reached by the trial court as erroneous, and reverse the judgment. All concur except Hough, J., who dissents.

Reversed.

Hough, J., Dissenting.—I dissent from the foregoing opinion, because I conceive it to be wrong in principle, injurious in its effects, and in direct conflict with the previous decisions of this court.

It is in direct conflict with the case of *Morgan v. James M. Martien*, 32 Mo. 438. In that case it appears that in May, 1857, Joseph G. Martien gave two notes to the plaintiff, Morgan, with the defendant, James M. Martien, as surety, one of which notes was due in one year, and the other in two years. For the purpose of securing said notes and others, Joseph G. Martien executed a trust deed containing the following provision : "If any one of said notes become due and remain for thirty days unpaid after due, then, by virtue of such default in the payment of any of the said notes, all the notes remaining unpaid shall, forthwith, become due and payable, as though due by the face thereof; and if said notes, or either of them, shall become due by their tenor, or the provisions of this trust, and be unpaid, then this deed shall remain in full force," &c.; and the trustees were authorized to proceed to sell. This deed,

42—68

though bearing even dates with the notes, was acknowledged June 9th, 1857, and filed for record July 16th, 1857. Suit was brought against the surety on the second note, and he contended that the principal in the note and the payee therein had, by the execution and acceptance of the deed of trust, altered the terms of the note on which he was surety, without his knowledge or consent, and that he was thereby discharged. The sole question, therefore, before the court was, as to the effect of the trust deed upon the terms of the note, and the court held that the surety was not discharged, because the trust deed did not alter or affect the time of payment of the note. The court said : "It is manifest that the deed was merely collateral, and intended as an additional and further security. So far from affecting the rights or remedies of the surety, it inures to his benefit. The object of the provision in the deed making certain notes mature upon the contingency expressed, was to enable the trustees to sell the property upon such contingency, and apply the proceeds, or so much thereof as might be necessary, to the liquidation of all the notes whether upon their face they had matured or not. It was to insure the prompt performance of the original contract, and not to change or alter it. It was to enable the trustees to apply the proceeds of the sale to the payment of the entire debt instead of a part. The notes could not, by the happening of such contingency, mature for general purposes, and hence the plaintiff could not have brought suit upon this note prior to its maturity, as expressed on its face." The fact that the trust deed was executed after the notes were made, only makes the judgment of the court stronger and more pointed against the opinion of my associates. Of course, it was competent for the principal parties to the note to change its terms, or the time of its payment, without the consent of the surety, but in such event the surety would be discharged. The court, however, held that the surety was not discharged, because the trust deed did not alter the terms of the note.

The opinion of my associates is also in conflict with
the decision of this court in *Mason v. Joseph S. Barnard and
Eliza B. Fithian*, 36 Mo. 384. Joseph S. Barnard executed
five notes, one of which was payable in six months, and the
remaining four in one, two, three and four years, respec-
tively. To secure these notes, Barnard executed a deed of
trust which provided that if default should be made in the
payment of any one of said notes, " then all of said notes,
at the option of the holder thereof, might be considered as
due, and the said trustees, or either of them, might, with-
out waiting for the maturity of any of the other notes,
proceed to sell," &c. Barnard conveyed to Mrs. Fithian
the land covered by the trust deed. The conveyance con-
tained a recital that, as part of the consideration therefor,
Mrs. Fithian was to pay the notes secured by the deed of
trust. This conveyance was a deed-poll and not a deed
*inter partes*. The notes due in two, three and four years
came to the possession of the plaintiff, Mason, and default
having been made in the payment of the note due in two
years, he elected to consider them all due, and brought a
suit of foreclosure against Barnard and Mrs. Fithian, and
obtained a judgment against both for the full amount of all
the notes, and for the sale of the mortgaged property.
This court held that no judgment whatever could be ren-
dered against Mrs. Fithian on the notes, and that the judg-
ment against Barnard on the notes not due on their face,
was erroneous, on the ground that the provision in the
trust deed declaring that all the notes should become due
in case of default, was for the sole purpose of distributing
the trust fund, and not for the purpose of obtaining a judg-
ment at law upon them.

The opinion of my associates is also in conflict with
the decision of this court in the case of *Hurck et al. v. Ers-
kine*, 45 Mo. 484. In that case three notes due respectively
in one, two and three years, were secured by a deed of trust,
which provided that " if said notes or interest, or any part
thereof, be not well and truly paid when due, then all of

said notes *shall become forthwith due and payable, whether due on their face or not.*" Default was made in the payment of the first note; the property was sold by the trustee, and the question as to the distribution of the proceeds was brought before the circuit court by a bill of interpleader filed by the trustee, the notes being held by different parties. The sole question before the court was as to the time of the maturity of the notes, as this court had held in *Mitchell v. Ladew*, 36 Mo. 526, and in *Thompson v. Field*, 38 Mo. 320, that where a deed of trust secures several notes maturing at different dates, the notes shall be paid in the order in which they mature, notwithstanding they might all be due at the time the sale was made. The circuit court held that, as by the express terms of the deed of trust the notes all became due upon default in payment of the first note, they all matured at the same time, and, therefore, stood on an equality in the distribution of the fund, and it, therefore, decreed a *pro rata* distribution. Judge Wagner, in delivering the opinion of the court, said: "We do not concur in this view. A similar question arose in the case of *Mason v. Barnard*, 36 Mo. 384. There, by the terms of the deed of trust, the trustee was empowered to sell all the property when the first note fell due; and they were all to be considered, at the option of the person holding the same, to be matured upon the first default. On that occasion we said: 'The reason for such a provision is obvious. Upon a sale of the whole property, if the purchase money exceeds the amount of the first note, it would have to lie in the hands of the trustee without interest till the succeeding note matured, if no condition was made to the contrary; and the condition inserted to elect to consider them all due was for the purpose of distributing the trust fund to all when the property was sold, but for that purpose only.' When a sale has to be resorted to and the property sold on account of default in the payment of any of the notes, it is advisable and advantageous that they should all be considered due; that a

final adjustment should be made, and the parties entitled thereto should receive their money, instead of suffering it to lie idle in the hands of the trustee."

The opinion of my associates is also in conflict with the decision of this court in the case of *Andrew F. Whelan v. Reilly et al.*, 61 Mo. 565. In that case the plaintiff had executed a note for $2,000, due in three years, together with six interest notes for $100 each, maturing at stated intervals during the three years. The deed of trust securing the notes provided that in case of default in the payment of any of the interest notes, the whole amount of the debt secured should become due and payable. Default was made as to two of the interest notes, and the property was advertised for sale, but before the sale all the costs and expenses incurred by the trustee, together with the amount of the two interest notes which had matured, were tendered to the trustee, which he refused to receive unless the principal note was paid. This the debtor refused to pay, and the property was sold. Upon his application the circuit court set the sale aside, and this court affirmed its judgment. Judge SHERWOOD, who delivered the opinion of this court, speaking of the oppressive conduct of the trustee in demanding payment of the whole debt, said : " He knew the amount of the costs due him, and yet, when an amount sufficient to cover them, as well as the matured interest notes is offered, his lips are sealed, except to refuse the amount offered, unless the principal note was paid. *He knew also, if he knew the requirements of his position, that the default in the payment of the interest notes was cured by the sum offered him, and, therefore, that payment of the $2,000 note should not have been demanded.*" The cases of *Morgan v. Martien*, 32 Mo. 438, and *Mason v. Barnard*, 36 Mo. 384, were both cited in argument, and relied upon by the counsel for Whelan, the plaintiff, and were followed by this court in that case, though they are not alluded to in the opinion. The same ruling was also made in the case of *John Whelan v. Reilly et al.*, 61 Mo. 578.

The case of *Brownlee v. Arnold*, 60 Mo. 79, is the only case I have been able to find which gives countenance to the decision in the case at bar. In that case I expressed no opinion on the point now in issue. That case, in my opinion, was incorrectly decided, and was evidently not well considered. None of the cases in this State, bearing upon the point under discussion, were cited in argument or examined by the court. Besides, the instrument sued on in that case, and treated as a promissory note, was not a promissory note, but a simple contract only, as it stipulated for the payment of attorney's fees and reasonable traveling and other expenses incurred in collecting the same, besides waiving all relief from valuation or appraisement laws of this or any other State. The deed of trust does not appear in the record, but its legal effect, as set out in the answer and admitted by the plaintiff, and the agreement of the parties in relation thereto, might make a distinction between that case and this. The sole question in *Waples v. Jones*, 62 Mo. 440, was whether, under the terms of the trust deed, the trustee had a right to sell for the non-payment of interest, and the reference to *Brownlee v. Arnold*, was wholly unnecessary, and somewhat inexplicable, as there is not the slightest resemblance between the two cases, apart from the fact that there was a deed of trust in each. With the exception of *Brownlee v. Arnold*, I have been unable to find a single case in the books which holds that the owner of a note, secured by mortgage, is bound by the terms of the mortgage, if he knows of its existence, although he may not wish to resort to, or rely upon the mortgage security.

The argument, based upon the assumption that, in a foreclosure suit on the trust deed in question, judgment would be rendered for the whole debt, whether due by the terms of the notes or not, is a plain *petitio principii*; and, besides, is completely overthrown by the decision in *Mason v. Barnard, supra*, where the precise point is deliberately

adjudged to the contrary, and this decision, as has been seen, was affirmed in *Hurck v. Erskine, supra.*

The rule in relation to reading several instruments together, is well stated in 2 Smith's Leading Cases, 6 Am. Ed. p. 322, in the note to the celebrated case of *Wain v. Warlters,* as follows: "Instruments executed at the same time, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together, as if they were as much one in form as they are in substance. *Church v. Brown,* 21 N. Y. 315, 330. * * To bring this rule into operation and render two writings virtually one, for the purpose of construction and interpretation, both need not be written at the same time, nor even refer to each other in terms. *Cross v. Norton,* 2 Atkyns 74. It is enough that both have or are designed to effect the same end or subject, and that their mutual dependence and connection appear, on comparing or reading them together, with the aid of such extrinsic evidence as may be requisite to ascertain and identify their subject matter."

An examination of the cases cited by the learned annotators in support of the foregoing rule, as well as the great mass of cases on the same subject to be found through the books, will show that this rule was never intended to be so applied as to make a negotiable promissory note and a mortgage contemporaneously or subsequently executed to secure its payment, as much one instrument, as if they were one in form. The rule relates to an entirely different class of cases. A note and mortgage do not constitute a single contract. They are separate instruments, executed for different purposes and differ in nature. The mortgage is governed by the law of real property, and the note by the law merchant. *Potter v. McDowell,* 43 Mo. 93, 98; *Linville v. Savage,* 58 Mo. 248; *Logan v. Smith,* 62 Mo. 455. All the authorities hold that the debt, which is evidenced by the note, is the principal thing, and the mortgage, which secures it, is simply an incident thereto. This has

been repeatedly decided by this court. *Labarge v. Chauvin*, 2 Mo. 180; *Anderson v. Baumgartner*, 27 Mo. 87; *Mitchell v. Ladew*, 36 Mo. 533; *Watson v. Hawkins*, 60 Mo. 554; *Logan v. Smith*, 62 Mo. 455. If a party relies upon a mortgage, which is nothing more than a contract under seal, of course he is bound by the terms of the contract, and can only enforce it according to its terms. But if the holder of a negotiable note, secured thereby, chooses to disregard or abandon the mortgage security, undoubtedly he may do so, and the note will then be enforced according to its terms, and the law of negotiable paper.

It has never been announced by any court, so far as my reading has extended, that a negotiable promissory note loses its negotiability when its payment is secured by mortgage. Yet, if the opinion of my associates is to obtain, that a negotiable note and a mortgage contemporaneously executed to secure it, are, in the eye of the law, but one instrument, the note will not only lose its negotiability, but it will also lose its character as a promissory note, and become, in conjunction with its complement, the mortgage, an ordinary contract merely. It is only necessary to imagine a promise to pay money, and a mortgage to secure it, united in the same instrument, signed by the party to be charged, in order to see at a glance that the legal character of such a paper is not that of a negotiable promissory note, but of a simple contract. Apart from other provisions of the mortgage, in case of default the costs and expenses of executing the trust would render the amount to be paid by the promisor uncertain, and would bring such an instrument directly within the rule laid down by this court in *First National Bank v. Gay et al.*, 63 Mo. 33.

It has been repeatedly decided that the transfer of a note secured by mortgage, entitles the indorsee to the benefit of the mortgage security, whether, at the time of the transfer, he knew of the existence of the mortgage or not. If, however, the mortgage, though recorded as provided by law, will not charge the holder of the note with notice of

its existence, and if the holder of the note is to be bound by the terms of the mortgage only when he has actual notice thereof, then, inasmuch as the negotiability of the notes will depend upon the fact of notice, we may have the singular spectacle of two negotiable promissory notes in form, complete and perfect in themselves, expressed in precisely the same language, executed at the same time, and secured by the same mortgage, one of which may be negotiable and payable according to its terms, and the other not. Nay, more, the same note which is not negotiable in the hands of one having notice of the mortgage, may be transferred to a party not having notice and again become negotiable.

. But if it be possible to preserve the negotiability of notes secured as the one here sued on, in the hands of persons having notice of the mortgage, and the opinion of my associates seems to assert that it is, must the holders of second and third installment notes, who may care nothing for the mortgage security, and may prefer to rely upon their indorsers, keep themselves informed, at their peril, as to the ownership of the first note, in order to ascertain whether there has been a default, and whether the notes held by them have become due, so that they may bind their indorsers? Such a requirement will be a new and inconvenient feature in the law of negotiable paper, and the time of payment of a negotiable promissory note so secured will vary accordingly as it may fall into the hands of those who have, or have not, notice of the mortgage.

The rule in relation to reading several instruments together is inapplicable to notes and mortgages. The two instruments are distinct and separate, and full effect should be given to both, and to the obvious intention of the parties. This can only be done by following the decisions of this court which I have heretofore cited.

It is a matter of common information among the members of the bar in some sections of the State, that mortgages and deeds of trust containing provisions in relation

to the maturity of installment notes similar to those contained in the deed of trust in the case at bar, have been in use in this State certainly since the year 1847. And they were brought into general use in consequence of the litigation which terminated in the decision of this court in *Kennedy's Admr. v. Hammond and Hall*, 16 Mo. 341. The object of such provisions was to enable the trustee to distribute the proceeds of the sale of the mortgaged property in all cases, as a court of equity always does when the mortgaged property is not susceptible of division and the whole must be sold, though a part only of the debt secured is due. In *Salmon v. Claggett*, 3 Bland Ch. 179, the chancellor said : "Where a debt, secured by mortgage, is made payable by installments, it is well settled that the mortgage becomes forfeited by the non-payment of the first installment, and may be foreclosed immediately after that time. If a bill be filed for that purpose, the debtor may, however, prevent a foreclosure or sale, by paying the installment then due, but if he fails to do so, then the mortgage may be entirely foreclosed, or so much of the property may be sold as will satisfy the sum due at that time; and the decree will be allowed to stand as a security for the other installments as they become due—as in case of a judgment at law for an annuity. But if the mortgaged property cannot be conveniently or safely sold in parcels, then it must be disposed of entire, and the whole debt raised and paid, with a rebate of interest on sums not due at the time of paying over the proceeds of the sale to the creditor. This is done from necessity, and as an unavoidable consequence of the peculiar nature of the case." See also *Mussina v. Bartlett*, 8 Porter 284, and *Baker v. Lehman*, 1 Wright 524.

There is, therefore, nothing harsh or rigorous in the provisions of the trust deed under consideration. They are really in the interest and for the benefit of the mortgagor as well as the creditor, as they require the proceeds of the sale to be applied at once to the payment of the debt, instead of leaving them in the hands of the trustee

without interest, and subjecting the mortgagor, perhaps, to even greater loss.

I am, therefore, of opinion that the judgment of the circuit court should be affirmed.